NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SELINA Z., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.Z., *Appellees*.

No. 1 CA-JV 19-0010
FILED 12-26-2019

Appeal from the Superior Court in Maricopa County
No. JD33000
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek

Patrick J. Waltz, Phoenix
By Patrick J. Waltz
*Co-Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

―――――――――――――――――

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Lawrence F. Winthrop joined.

―――――――――――――――――

**C A T T A N I**, Judge:

¶1          Selina Z. ("Mother") appeals from the superior court's order terminating her parental rights as to her daughter, D.Z. (born in July 2016). For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2          In August 2016, the Department of Child Safety ("DCS") filed a dependency petition alleging that D.Z. was dependent as to Mother. DCS alleged that Mother had a history of domestic violence, was possibly using illegal substances or suffering from mental illness, was transient, and was leaving D.Z. and her other child, C.Z. (born in January 2015), with inappropriate caregivers for several days at a time. DCS further alleged that approximately three weeks after D.Z. was born, D.Z.'s father, Miller Y., assaulted Mother while he was holding D.Z. Mother denied the allegations but submitted the issue of dependency to the superior court.

¶3          The court adjudicated D.Z. dependent and approved DCS's case plan of family reunification. Pursuant to the case plan, DCS referred Mother for a substance-abuse assessment, drug testing, a psychological evaluation, parent-aide services, and supervised visits.

¶4          Mother began participating in reunification services, testing negative for illegal substances and completing a substance abuse assessment with TERROS in September 2016. During her intake with TERROS, Mother accepted a referral packet for domestic violence counseling at Fresh Start Women's Center. Mother also enrolled in Focused Family Services for individual counseling and agreed to participate in 26 counseling sessions. After Mother completed two of these individual counseling sessions, DCS determined that Focused Family Services was unable to provide domestic violence counseling and referred Mother to Applied Interventions.

¶5          Mother completed a psychological evaluation in January 2017 and was diagnosed with borderline intellectual functioning, an unspecified

personality disorder with borderline personality features, and an unspecified substance-related disorder. The evaluation recommended that Mother be referred for drug-testing for six months to a year. Although Mother initially participated in drug-testing, between February and April 2017, she missed two required drug tests and submitted three voided tests. By August 2017, Mother's drug testing was closed out because of her inconsistent testing.

¶6        Mother attended two domestic violence counseling sessions with Applied Interventions but stopped attending in June 2017. Mother's supervised visits were also suspended after she missed three visits in a row.

¶7        In July 2017, Mother was arrested after she intentionally drove over C.Z.'s father, John K., in her car. Mother subsequently pleaded guilty to two counts of attempted aggravated assault and was sentenced to one year in prison, followed by three years' supervised probation. While incarcerated, Mother was charged with promoting prison contraband, possession of a narcotic drug (heroin), possession of drug paraphernalia, and tampering with physical evidence.

¶8        Mother's DCS case manager visited her once while she was incarcerated and encouraged her to participate in services available to her in prison and to write letters to her children. There is no evidence Mother did either.

¶9        In September 2017, DCS moved to terminate Mother's parental rights based on nine- and fifteen-months' time in care. *See* A.R.S. § 8-533(B)(8)(a), (c). After a trial in December 2018, the superior court found that both grounds supported termination and that termination would be in D.Z.'s best interests. Mother timely appealed, and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶10        The superior court may terminate a parent–child relationship if clear and convincing evidence establishes at least one statutory ground for severance, and a preponderance of the evidence shows severance is in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Two such statutory grounds are nine months' time in care, which requires proof that "the parent has substantially neglected or wil[l]fully refused to remedy the circumstances that cause the child to be in an out-of-home placement," and fifteen months' time in care, which requires proof that "the parent has been unable to remedy the circumstances" necessitating the out-of-home placement and that "there is

a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(a), (c).

**¶11**     We review a severance ruling for an abuse of discretion, accepting the court's factual findings unless clearly erroneous and viewing the evidence in the light most favorable to sustaining the court's ruling. *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008); *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). We similarly defer to the superior court's credibility determinations. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶12**     There is no dispute that D.Z. was in an out-of-home placement for more than fifteen months, and Mother does not challenge the best interests finding. Mother argues, however, that DCS failed to make diligent efforts to provide appropriate reunification services, because DCS did not provide adequate domestic violence services or provide her services and visitation while Mother was incarcerated.

**¶13**     Severance based on the statutory grounds of time in care requires proof that DCS "made a diligent effort to provide appropriate reunification services." A.R.S. § 8-533(B)(8). Accordingly, DCS must make all reasonable efforts to preserve the family relationship. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999). DCS is not required to offer every conceivable service; rather, the benchmark is whether DCS "provide[d] a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id.* at 192, ¶ 37.

**¶14**     Although Mother initially was actively engaged in reunification services, her participation began to decrease in April 2017, and she stopped participating altogether after her arrest in July 2017. Mother contends that DCS "lost contact" with her because she was arrested that July. But Mother was released from jail the day after the incident and has not provided any explanation as to why she failed to contact DCS between the time she was released from jail in July 2017 and when she pleaded guilty to several offenses in April 2018.

**¶15**     Mother also contends that it took DCS nearly a year to provide domestic violence counseling. TERROS, however, provided Mother with a catalog of domestic violence workshops in September 2016 that she did not take advantage of until January 2017. And, between January and April, Mother only participated in two counseling sessions.

4

Once DCS determined that Mother's counseling sessions were inadequate, it referred Mother to a different provider. Mother also only participated in a few sessions with this provider before she was arrested for her domestic violence offense.

¶16 Finally, Mother argues that DCS failed to provide services and visitation while she was incarcerated. But Mother did not raise this issue below, and she has thus waived it. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178, ¶¶ 13–14 (App. 2014) (finding that a parent must raise a challenge to the adequacy of services in the juvenile court).

¶17 Moreover, a DCS caseworker visited Mother while she was incarcerated and encouraged her to participate in the services that were available to her in prison. *Cf. Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451, ¶ 17 (App. 2007) (noting that because incarceration severely limits the services DCS can provide, it "will as a practical matter typically preclude all but minimal visits."). As to visitation, Mother had stopped visiting D.Z. in June 2017, more than nine months before being incarcerated, and did not request visitation thereafter. Accordingly, the record supports the superior court's finding the DCS made diligent efforts to provide reunification services to Mother.

## CONCLUSION

¶18 For the foregoing reasons, we affirm the superior court's order terminating Mother's parental rights as to D.Z.



AMY M. WOOD • Clerk of the Court
FILED: AA